**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **CHRIS GILMORE,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:26-cv-00256-P** |
| | § | |
| **AMERISURE INSURANCE COMPANY,** | § | |
| | § | |
| ***Defendant.*** | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF THIS COURT:**

Plaintiff Chris Gilmore ("Plaintiff") files this First Amended Complaint against Defendant Amerisure Insurance Company ("Amerisure" or "Defendant") and respectfully shows the Court as follows:

### PARTIES

1. Plaintiff Chris Gilmore is an individual residing in Tarrant County, Texas, and is therefore a citizen of the State of Texas for purposes of diversity jurisdiction. Plaintiff may be served through the undersigned counsel.

2. Defendant Amerisure Insurance Company is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. *See* Fed. R. Civ. P. 7.1 Disclosure Statement (ECF No. 2). For diversity purposes, Defendant is a citizen of Michigan. *See* 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because this action is between citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen of Texas. Defendant is a citizen of Michigan. There is complete diversity of citizenship.

4. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks underinsured-motorist benefits, damages for breach of contract, statutory penalties, treble damages, and attorney's fees that, in the aggregate, exceed the jurisdictional threshold.

5. This action was originally filed in the 141st Judicial District Court of Tarrant County, Texas, as Cause No. 141-374297-26. Defendant removed the action to this Court on March 6, 2026 (ECF No. 1).

6. Venue is proper in the Fort Worth Division of the Northern District of Texas under 28 U.S.C. §§ 1391(b) and 1441(a). Plaintiff resides in Tarrant County, Texas. The motor-vehicle collision giving rise to Plaintiff's injuries occurred within the Northern District of Texas. A substantial part of the events and omissions giving rise to Plaintiff's claims—including Defendant's handling of the underinsured-motorist claim—occurred within Tarrant County.

## FACTUAL ALLEGATIONS

### A. The Collision and Plaintiff's Injuries

7. On August 11, 2023, Plaintiff Chris Gilmore, while in the course and scope of his employment with Prism Electric, Inc. ("Prism Electric"), was operating a company vehicle (VIN: 1GCZGGFG2L1232498) when he was rear-ended by Robert W. Johnson ("Johnson"), an underinsured motorist. The crash occurred early in the morning, before 6:30a.m. at 3950 Jim

Wright Freeway 820 NW near a Home Depot. Plaintiff immediately called 911 and reported the incident to police. Plaintiff also reported the incident to his employer, Prism Electric.

8. As a direct and proximate result of Johnson's negligence, Plaintiff suffered catastrophic injuries, including: (a) a severe aggravation of a pre-existing cervical spine condition, (b) a new, traumatic tear of his right rotator cuff and biceps tendon, and (c) injuries to his back and other parts of his body.

9. The severe worsening of Plaintiff's cervical condition resulted in advancing myelopathy—the physical thinning and wasting of the spinal cord—which necessitated a four-level anterior cervical discectomy and fusion ("ACDF") performed on March 12, 2024.

10. Plaintiff's post-operative course was complicated by severe dysphagia (inability to swallow), which required the surgical placement of a percutaneous endoscopic gastrostomy ("PEG") feeding tube and a second hospitalization for related complications.

11. To date, Plaintiff has incurred significant economic damages, including lost wages and paid and incurred medical expenses. Plaintiff's non-economic damages—including past and future physical pain, mental anguish, physical impairment, and disfigurement—are substantial and in excess of the available insurance coverages.

**B. The Insurance Policy**

12. At the time of the collision, Prism Electric was insured by Defendant Amerisure under Policy No. CA20464901701 (the "Policy"), effective July 1, 2023 through July 1, 2024. The Policy included underinsured-motorist ("UIM") coverage under Endorsement CA 21 09.

13. Under Endorsement CA 99 33 (Employees as Insureds), Plaintiff Chris Gilmore is an insured under the Policy.

14. The Policy provides UIM coverage with a limit of $100,000.00 for the vehicle (VIN: 1GCZGGFG2L1232498) Plaintiff was operating at the time of the collision.

15. Johnson, the at-fault driver, carried only $30,055.00 in liability coverage, which is less than Plaintiff's damages. Johnson is therefore an underinsured motorist within the meaning of the Policy and law.

**C. Amerisure's Handling of Plaintiff's Claim**

16. On September 10, 2024, Plaintiff, through counsel, provided written notice of his UIM claim to Amerisure. Per Endorsement CA 01 96, Amerisure was contractually obligated to acknowledge the claim and begin an investigation within fifteen (15) business days of receipt.

17. Amerisure failed to acknowledge the claim within fifteen (15) business days. Instead, Amerisure's adjuster, Wanda McCauley ("McCauley"), waited more than two months—until November 12, 2024—to respond. In that response, McCauley improperly demanded that Plaintiff obtain an asset affidavit from the at-fault driver, a duty that rests with the insurer under the Policy's subrogation endorsements (CA 04 44). McCauley also stated that the focus of Amerisure's investigation was "to confirm the surgery and complications are related to the loss." By demanding that Plaintiff obtain the at-fault driver's asset affidavit—an investigative task that is the insurer's responsibility, not the claimant's—Amerisure improperly shifted its own burden onto Plaintiff as a condition of evaluating the claim.

18. On January 8, 2025, Plaintiff sought permission from Amerisure to accept a full policy-limits settlement offer ($30,055.00) from Johnson's insurer, Progressive. McCauley did not respond. On January 22, 2025, Plaintiff's counsel sent a second letter asserting that Amerisure had waived its right to withhold consent due to its prejudicial delay. McCauley granted permission the following day, January 23, 2025.

19. In January 2025, Plaintiff submitted his initial UIM demand to Amerisure, accompanied by medical records and billing. Plaintiff's counsel then spent two weeks attempting to confirm Amerisure's receipt of the voluminous records. After calling and complaining about McCauley's refusal to acknowledge receipt, on February 6, 2025, McCauley finally confirmed receipt and requested a 30-day extension to respond, representing that the extension would be beneficial for Plaintiff so Amerisure could meet with Prism Electric and obtain its approval. Plaintiff agreed to extend the demand deadline to March 7, 2025.

20. Despite representing that the extension would benefit Plaintiff, Amerisure did not evaluate the claim. On March 6, 2025, McCauley responded that Amerisure needed "verification from the Workers Compensation Policy if they would pay for the claim or a portion of the claim" before it would assess the UIM demand.

21. In other words, Amerisure used the extension to meet with Plaintiff's employer and then refused to evaluate the UIM claim, instead diverting Plaintiff to pursue a workers' compensation claim first. This diversion was particularly problematic because: (a) Prism Electric had never filed a workers' compensation claim on Plaintiff's behalf despite his report of the injury; (b) Prism Electric misrepresented to Plaintiff he could not file such a claim because he was purportedly off the clock at the time of the collision; and (c) Plaintiff's non-economic damages—which are not recoverable in workers' compensation—alone exceeded the UIM policy limits.

22. Upon investigation, Plaintiff discovered that the workers' compensation carrier for Prism Electric is Amerisure itself. The diversion to workers' compensation thus created an additional five-month delay while Amerisure, wearing two hats as both the UIM carrier and the workers' compensation carrier, avoided evaluating the UIM claim. Amerisure's dual role created an inherent conflict of interest: as the UIM carrier, Amerisure had a contractual obligation to

evaluate Plaintiff's claim promptly; as the workers' compensation carrier, Amerisure had a financial incentive to deny the workers' compensation claim and use the pendency of that claim as a basis to delay the UIM evaluation. Amerisure did both—it denied the workers' compensation claim on August 17, 2025, and then continued to refuse to evaluate the UIM claim.

23. On August 17, 2025, Amerisure denied Plaintiff's workers' compensation claim. On August 21, 2025, Plaintiff submitted a renewed UIM demand. McCauley again refused to evaluate the claim. On September 22, 2025—the final day of the demand period—McCauley responded with new document requests: (1) medical records including a treatment referral for the January 17, 2024 radiology; (2) medical records from the provider related to July 20, 2019 MRIs; and (3) PCP records for five years pre-dating the accident. McCauley stated that "the documentation you have provided to-date is extremely limited and incomplete" and that "[e]xcessive and unrelated charges will be reduced from your client's medical bills." That is despite the fact that Plaintiff has submitted over 4,000 pages of medical and billing records to Amerisure that documented over $190,000.00 in paid and incurred medical bills.

24. On September 24, 2025, Plaintiff renewed his UIM demand and provided the 2019 MRI reports. Plaintiff objected to the request for five years of PCP records as overbroad and inapplicable because Plaintiff does not have a PCP. Plaintiff further objected to the demand for a referral slip for the January 17, 2024 imaging as immaterial, given that Amerisure already possessed the MRI report itself.

25. On October 6, 2025, McCauley again refused to evaluate the claim. McCauley insisted on the referral document because she "need[ed] this to confirm the reason for the MRI referral." McCauley acknowledged receiving the 2019 MRIs but now demanded additional records, including "the medical records including the reason for the 2019 MRI." McCauley ignored

Plaintiff's response that he does not have a PCP and renewed the request for five years of PCP records to "confirm if Mr. Gilmore had a pre-existing condition." McCauley again characterized the documentation provided as "extremely limited and incomplete" without identifying which records were purportedly missing, excessive, or unrelated. Notably, McCauley's October 6, 2025 letter dropped the word "excessive" from the characterization that appeared in her September 22, 2025 letter—changing "[e]xcessive and unrelated charges will be reduced" to merely "[u]nrelated charges will be reduced"—suggesting that Amerisure itself recognized the prior characterization was unsupported.

26. The foregoing course of conduct—spanning more than one year from the date of the initial claim notice—constitutes a pattern of delay and obstruction in which Amerisure has repeatedly refused to evaluate a meritorious UIM claim on shifting and pretextual grounds. Amerisure has done almost everything in its power to deny, delay, and refuse to pay this claim. It failed to acknowledge the claim on time. It failed to acknowledge receipt of voluminous records. It called those voluminous records "extremely limited and incomplete." It misrepresented that it would evaluate Plaintiff's claim after asking for extensions to evaluate it. It waited until the last possible minute to request records that do not exist so it could conduct a fishing expedition into Plaintiff's medical history.

## CAUSES OF ACTION

### Count One
(Declaratory Judgment)

27. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

28. Plaintiff brings this action under 28 U.S.C. § 2201. An actual, justiciable controversy exists between Plaintiff and Defendant regarding Plaintiff's rights and Defendant's obligations

under the Policy. Plaintiff contends he is entitled to UIM benefits under the Policy. Defendant, by its conduct, has refused to acknowledge or pay Plaintiff's claim.

29. Accordingly, Plaintiff seeks a declaratory judgment establishing the rights and responsibilities under the Policy, including:

(1) Plaintiff's status as an insured under the Policy;

(2) That Plaintiff satisfied all conditions precedent under the Policy;

(3) Robert W. Johnson's status as an underinsured motorist under the terms of the Policy, *i.e.*, that the limits of Johnson's liability coverage are less than Plaintiff's damages;

(4) Robert W. Johnson's negligence in causing the collision and Plaintiff's injuries;

(5) That Plaintiff's damages were proximately caused by Robert W. Johnson's negligence;

(6) That Plaintiff's damages fall within the coverage afforded under the Policy;

(7) That Plaintiff's damages exceed any applicable third-party liability insurance limits; and

(8) That Plaintiff is entitled to recover under the Policy.

30. Resolution of this controversy is necessary to establish the predicate obligation for Plaintiff's remaining claims. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2007).

**Count Two**
(Breach of Contract)

31. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

32. Plaintiff also sets forth causes of action for breach of contract, violations of the Texas Insurance Code, and the Texas Prompt Payment of Claims Act. Assuming Plaintiff obtains a

judgment, finding, or adjudication that Plaintiff is entitled to underinsured motorist coverage on the date of the crash, Plaintiff asserts these causes of action in the same suit. *See Brainard*, 216 S.W.3d at 818.

33. This cause of action is asserted contingent upon—and shall be abated pending—a judicial determination under Count One that Defendant is obligated to pay UIM benefits under the Policy.

34. Defendant had a contract of insurance with Plaintiff's employer, which Plaintiff is a beneficiary under. Defendant breached the terms of the contract by wrongfully refusing to assess and pay the claim. Plaintiff was damaged as a result of Defendant's breach.

**Count Three**
(Bad Faith)

35. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

36. This cause of action is asserted contingent upon—and shall be abated pending—a judicial determination under Count One that Defendant is obligated to pay UIM benefits under the Policy. *See Brainard*, 216 S.W.3d at 818.

37. Defendant Amerisure is required to comply with Chapter 541 of the Texas Insurance Code.

38. Defendant violated Section 541.060 of the Texas Insurance Code by engaging in the following unfair settlement practices with respect to Plaintiff's claim:

a. misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue, Tex. Ins. Code § 541.060(a)(1). Specifically, on or about February 6, 2025, McCauley represented to Plaintiff's counsel that the 30-day extension would be "beneficial for Plaintiff" because Amerisure could meet with Prism Electric, when the result of that meeting was to divert Plaintiff's claim to workers' compensation

rather than advance the UIM evaluation. McCauley further misrepresented on September 22, 2025 and October 6, 2025 that Plaintiff's documentation was "extremely limited and incomplete" when Plaintiff had provided comprehensive medical records and billing for all treating providers;

b. failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear, Tex. Ins. Code § 541.060(a)(2). Specifically, from September 10, 2024 through at least October 6, 2025, McCauley repeatedly refused to evaluate Plaintiff's UIM claim despite receiving comprehensive medical records and billing documentation demonstrating catastrophic injuries requiring a four-level ACDF surgery and PEG tube placement. Each demand was met with new, shifting requests for additional information while Amerisure never provided a coverage evaluation, a reservation of rights, or a settlement offer;

c. failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim, Tex. Ins. Code § 541.060(a)(3). Specifically, despite more than one year of correspondence, Amerisure never provided a substantive coverage evaluation, never identified which policy provisions or factual bases justified its refusal to assess the claim, and never issued a formal denial or reservation of rights;

d. failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff, Tex. Ins. Code § 541.060(a)(4). Specifically, from the initial claim notice on September 10, 2024 through the filing

of this lawsuit, Amerisure never affirmed or denied coverage for Plaintiff's UIM claim and never submitted a reservation of rights;

e. refusing, failing, or unreasonably delaying a settlement offer under applicable first-party coverage on the basis that third parties are responsible for the damages suffered, Tex. Ins. Code § 541.060(a)(5). Specifically, Amerisure delayed its UIM evaluation by approximately five months by requiring Plaintiff to first pursue a workers' compensation claim—with Amerisure's own workers' compensation carrier—before Amerisure would assess its UIM obligation; and

f. refusing to pay a claim without conducting a reasonable investigation with respect to the claim, Tex. Ins. Code § 541.060(a)(7). Specifically, Amerisure's investigation consisted of requesting documents seriatim, demanding Plaintiff pursue a workers' compensation claim with Amerisure's own workers' compensation division, and repeatedly characterizing Plaintiff's voluminous production as "extremely limited and incomplete" without identifying what was purportedly deficient and doing nothing further beyond that.

39. Defendant violated Section 541.061 of the Texas Insurance Code, engaged in unfair or deceptive acts and practices in the business of insurance, and misrepresented the insurance policy by:

a. making an untrue statement of material fact, Tex. Ins. Code § 541.061(1). Specifically, on September 22, 2025 and again on October 6, 2025, McCauley represented that Plaintiff's documentation was "extremely limited and incomplete." This statement was untrue. Plaintiff had provided comprehensive medical records and billing for all treating providers;

b. failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made, Tex. Ins. Code § 541.061(2). Specifically, on or about February 6, 2025, McCauley represented to Plaintiff's counsel that the 30-day extension would be "beneficial for Plaintiff" because Amerisure could meet with Prism Electric. McCauley failed to disclose that the purpose or result of that meeting would be to divert Plaintiff's claim to workers' compensation rather than to advance the UIM evaluation;

c. making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact, Tex. Ins. Code § 541.061(3). Specifically, McCauley's repeated demands for PCP records "five years pre-dating the accident" to "confirm if Mr. Gilmore had a pre-existing condition" would mislead a reasonably prudent person into believing that production of such records was a precondition to Amerisure's evaluation of the claim; and

d. failing to disclose a matter required by law to be disclosed, Tex. Ins. Code § 541.061(5). Specifically, Section 542.056(a) of the Texas Insurance Code requires an insurer to notify a claimant in writing of the acceptance or rejection of a claim and the reasons for rejection. Despite repeated demands and more than one year of correspondence, Amerisure failed to accept or reject Plaintiff's claim, failed to identify with specificity which records it considered deficient, which charges it considered "excessive" or "unrelated," and failed to disclose the basis in the Policy or applicable law for its refusal to evaluate or pay the claim.

40. Defendant's violations of Chapter 541 of the Texas Insurance Code, as enumerated above, caused damages to Plaintiff in at least the amount of policy benefits wrongfully withheld by Defendant.

41. Defendant knowingly committed the acts complained of herein. The pattern of conduct described above—including Amerisure's use of its dual role as both UIM carrier and workers' compensation carrier to create a five-month delay, its repeated mischaracterization of Plaintiff's comprehensive documentation as "extremely limited and incomplete," its shifting and pretextual demands for additional records, and its year-long refusal to evaluate the claim despite possessing sufficient information to do so—demonstrates that Defendant's violations were committed knowingly. As such, Plaintiff is entitled to treble damages and/or exemplary damages under Section 541.152(a)-(b) of the Texas Insurance Code.

**Count Four**

(Texas Prompt Payment of Claims Act)

42. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

43. Defendant's failure to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 et seq. of the Texas Insurance Code. Specifically, Plaintiff provided notice of his claim on September 10, 2024. Amerisure did not acknowledge receipt of the claim until November 12, 2024—sixty-three days after notice, in violation of the fifteen days requirement of Section 542.055. Amerisure has never accepted or rejected the claim, in violation of Section 542.056, which requires the insurer to notify the claimant in writing of the acceptance or rejection of the claim not later than the fifteenth business day after the insurer receives all items, statements, and forms reasonably requested and required. And Amerisure has never paid the claim, in violation of Section 542.058, which requires payment within five business days of notice of acceptance.

44. Therefore, in addition to Plaintiff's claim for damages, Plaintiff is entitled to interest at the rate of eighteen percent per annum and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**ATTORNEY'S FEES**

45. Plaintiff incorporates all preceding paragraphs by reference as if fully set forth herein.

46. Plaintiff is entitled to reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code Sections 38.001–38.003 because he is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the amount owed before the expiration of the 30th day the claim was presented.

47. Plaintiff further prays that he be awarded all reasonable attorneys' fees incurred in prosecuting his causes of action through trial and appeal under Sections 541.152 and 542.060 of the Texas Insurance Code.

**CONDITIONS PRECEDENT**

48. All conditions precedent to Plaintiff's right to recover under Count One have been performed or have occurred. To the extent that conditions precedent to Plaintiff's right to recover under Counts Two, Three, and Four require a judicial determination of Defendant's contractual liability, Plaintiff seeks that determination under Count One.

**DAMAGES**

49. Plaintiff's damages include, inter alia, injuries to his neck, back, shoulder, and other parts of his body, which resulted in severe pain, physical impairment, discomfort, mental anguish, distress, and other medical problems. Plaintiff has incurred medical expenses, and is likely to incur future medical expenses, for the treatment of injuries caused by the underinsured motorist's negligence. Therefore, Plaintiff brings suit for the following damages:

(1) past and future physical pain and suffering;

(2) past and future physical impairment;

(3) past and future lost wages and earning capacity;

(4) past and future mental anguish;

(5) past and future medical expenses;

(6) past and future disfigurement;

(7) treble damages and/or exemplary damages under the Texas Insurance Code;

(8) costs of court; and

(9) reasonable and necessary attorney's fees.

**DEMAND FOR JURY TRIAL**

50. Plaintiff demands a trial by jury on all issues so triable as of right under the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38.

**PRAYER**

Plaintiff prays that Defendant be required to appear herein and, after a trial on the merits, that the Court enter judgment awarding Plaintiff actual damages and additional damages as allowed by law, costs of court, pre- and post-judgment interest to the maximum extent as allowed by law, and all such other and further relief, both general and special, at equity and at law, to which Plaintiff may be justly entitled.

Respectfully submitted,

**BENDER LAW PLLC**

By: *<u>/s/ Aaron K. Bender</u>*
Aaron K. Bender
State Bar No. 24101502
5020 Montrose Blvd., Floor 6
Houston, Texas 77006
Telephone: (832) 675-9608

Facsimile: (832) 675-9330
abender@benderlaw.law

**ATTORNEY FOR PLAINTIFF**

**Certificate of Service**

This will certify that a true and correct copy of this document was served on all counsel of record on March 16, 2026 in accordance with the applicable Federal Rules of Civil Procedure:

Christina A. Culver
David Points, III
THOMPSON, COE, COUSINS & IRONS, LLP
4400 Post Oak Parkway, Suite 1000
Houston, Texas 77027
Telephone: (713) 403-8210
cculver@thompsoncoe.com
dpoints@thompsoncoe.com

Local Counsel:
Rhonda J. Thompson
THOMPSON, COE, COUSINS & IRONS, LLP
700 North Pearl Street, 25th Floor
Dallas, Texas 75201-2832
rthompson@thompsoncoe.com

***Attorneys for Defendant***

*/s/ Aaron K. Bender*
Aaron K. Bender